**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.P.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.P.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1753 MDA 2017 |

Appeal from the Order Entered October 17, 2017
In the Court of Common Pleas of Centre County Civil Division at No(s):
2017-3567

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 17, 2018**

Appellant, M.P.C., appeals from the order denying his petition for review of certification for involuntary inpatient mental health treatment pursuant to the Mental Health Procedures Act ("MHPA").  **See** 50 P.S. § 101, *et seq*.  We affirm.

At the time of his involuntary commitment, Appellant was an inmate at the State Correctional Institution at Rockview ("SCI Rockview") serving his sentence which was due to expire on November 1, 2017.  On October 9, 2017, Kevin Burke, M.D., a treating physician at SCI Rockview, filed a petition pursuant to section 7304 of the MHPA seeking involuntary mental health treatment for Appellant.  The trial court appointed counsel for Appellant and a hearing was scheduled before a mental health review officer.

At the mental health commitment hearing, Dr. Burke, Appellant's acting psychiatrist, testified that Appellant has suffered with schizophrenia for many years. N.T., 10/10/17, at 7. Appellant refuses to take his medication rendering him "extremely ill with many delusions, hallucinations and disturbing thoughts." *Id.* at 8. As a result, Dr. Burke opined that Appellant "would be completely unable to care for himself without the structure of the Department of Corrections or another kind of facility." *Id.* Dr. Burke noted that the Department of Corrections was providing Appellant with lodging, food and clothes; however, Dr. Burke believed that Appellant would not be able to provide those necessities for himself. *Id.* at 12-13. In fact, Appellant was housed in a unit at the prison in which his food was provided to him on a tray. If Appellant were in the general population where he would have to get his own food on a tray, Dr. Burke was not sure Appellant would be able to do that. *Id.* at 14. As a result, Dr. Burke opined as follows:

> Q. Right now, is [Appellant] receiving care and assistance for his condition?
>
> A. He's receiving the basic needs. Again, he won't take the medications that are required for his condition. But he is being cared for as far as his meals and lodging, et cetera, by the Department of Corrections, of course.
>
> Q. Okay. If that amount of support were taken away, would he be able to provide for his own health, safety, welfare and nutrition?
>
> A. No, ma'am, not in any way.

Q.     Would it be to such an extent that that [*sic*] without the treatment afforded to him his behavior would lead to death, disability or serious physical debilitation within 30 days?

A.     That's my opinion.

*Id.* at 8-9.

Appellant testified that he was not homeless prior to incarceration or during his periods of parole, and he would live with his grandmother when he is released. *Id.* at 16.

The mental health review officer recommended a finding that Appellant be deemed severely mentally disabled, and be involuntarily committed pursuant to section 7304 of the MHPA. Based upon this recommendation, the trial court ordered[1] Appellant to be involuntarily committed for a period not to exceed 90 days.[2]     Appellant filed a petition with the trial court seeking a review of the commitment order, which the trial court denied on October 17, 2017. This timely appeal followed.[3]

---

[1] The commitment order, dated October 11, 2017, was docketed with the Centre County Prothonotary on October 12, 2017.

[2] Although Appellant's October 12, 2017 commitment order has expired, this matter is not moot. ***See Commonwealth v. C.B.***, 452 A.2d 1372, 1373 (Pa. Super. 1982) (stating that because an "order of involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible, [an appeal therefrom] is not moot.")

[3] Following the filing of the notice of appeal, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal ("concise statement") in accordance with Pa.R.A.P. 1925(b). Appellant

On appeal, Appellant raises the following issue for our review,

Whether the [Commonwealth] lacked sufficient evidence to justify a commitment under the [MHPA] as it presented no evidence of acts which would support a reasonable conclusion that death or serious physical debilitation or serious bodily injury were likely imminent if Appellant were not forced to undergo psychiatric treatment?

Appellant's Brief at 4 (complete capitalization omitted).

In reviewing orders of involuntary commitment entered pursuant to the MHPA, our Supreme Court has stated that "[t]he function of [the appellate court] is not to find facts but to determine whether there is evidence in the record to justify the hearing court's findings." *Commonwealth ex rel. Gibson v. DiGiacinto*, 439 A.2d 105, 107 (Pa. 1981). "The courts, in overseeing such liberty-depriving bureaucratic action, must be especially protective of the rights of the individual and vigilant in ensuring that the legal safeguards have been complied with." *In re Remley*, 471 A.2d 514, 517 (Pa. Super. 1984). Moreover, "[t]he high standard for involuntary commitment is not relaxed when applied to an incarcerated individual." *In re T.T.*, 875 A.2d 1123, 1127 (Pa. Super. 2005).

Section 7304 of the MHPA allows for court-ordered involuntary treatment, for a period not to exceed 90 days, when an individual is determined to be "severely mentally disabled and in need of treatment, as

_____

filed a timely concise statement raising the issue he now raises on appeal. The trial court filed its opinion pursuant to Pa. R.A.P. 1925(a) on December 1, 2017.

- 4 -

defined in section 301(a)." 50 P.S. § 7304. Section 301(a) states that a person is deemed to be severely mentally disabled when,

> as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301(a). The MHPA sets forth several ways in which a person can be considered a danger of harm to others or oneself. *See* 50 P.S. §§ 7301(b)(1) (serious bodily harm to others), 7301(b)(2)(i) (inability to care for oneself, creating a danger of death or serious harm to oneself), 7301(b)(2)(ii) (attempted suicide), 7301(b)(2)(iii) (self-mutilation). In this case, the trial court found that the Commonwealth presented evidence sufficient to commit Appellant under § 7301(b)(2)(i) of the MHPA which provides that a person is a "clear and present danger" to himself when, within the last 30 days, he

> has acted in such a manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment was afforded under this act.

50 P.S. § 7301(b)(2)(i). After careful review, we conclude that the evidence in the record justifies the trial court's findings.

Dr. Burke testified that Appellant's lengthy history of schizophrenia, resulting in hallucinations, delusions and disturbing thoughts, is exacerbated by Appellant's failure to take his medication. As a result, he is unable to

provide the basic necessities for himself such as lodging[4], nourishment and clothing. Appellant's mental health issues are so severe that Dr. Burke doubted that Appellant could obtain his own tray of food if he were in the prison's general population as opposed to a special unit where he is given his food tray. Based upon a review of the record, there is evidence justifying the trial court's finding that Appellant would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety. Moreover, there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment was afforded to Appellant. Hence, commitment under § 7301(b)(2)(i) of the MHPA was proper.

_____

[4] Appellant testified that he would live with his grandmother after release and, therefore, would not be homeless. N.T., 10/10/17, at 16. However, we note that Appellant's testimony was scattered, rambling and far from certain. For example, when asked whether he has a place to go after release, Appellant answered "Yes. They told me I can go home with my grandma. They don't want [] me going home with my wife, because of our skin color. They talking about race discrimination, because her skin is white and mine's not. So my grandmother accepted --." *Id.* This testimony is far from conclusive that Appellant does have a place to go upon release from prison. In fact, Appellant's expressed belief in a discriminatory reason that prevents reunification with his wife injects substantial uncertainty about the confirmation and stability of his residential arrangement with his grandmother. Moreover, even if Appellant were not going to be homeless upon release, that fact does not lessen Dr. Burke's professional opinion that Appellant is unable to provide for his basic needs.

Appellant relies upon our Supreme Court's holding in **Gibson, supra**, as support for his argument that the trial court erred in entering the commitment order. Appellant's Brief at 13-14. The facts and rationale of that case are inapposite and clearly distinguishable from the case at hand.[5] In **Gibson**, our Supreme Court reversed an order for involuntary commitment of a prisoner on the basis that the evidence presented at the mental health hearing was insufficient. **Gibson**, 430 A.2d at 107. The evidence presented to the mental health officer indicated that the appellant was a schizophrenic and his psychiatrist opined that the appellant posed a clear and present danger to himself and others. **Id.** at 106. Evidence was introduced that the appellant was found extinguishing a burning newspaper in his cell, he did not regularly take his medication as prescribed, and he had a twisted coat hanger in his

---

[5] In **Gibson**, the basis for confinement was the physical danger Gibson posed to himself and others. The required proof was that, within the past 30 days, Gibson inflicted (or attempted to inflict) bodily injury upon others or that he attempted suicide or self-mutilation. Finding no such conduct in the record, our Supreme Court held that the evidence was insufficient to support involuntary confinement. Here, in contrast, the basis for commitment is Appellant's inability to ensure his own safety and well-being, a decidedly more prospective inquiry given that Appellant currently resides in a controlled environment where his basic needs are met by others. It was entirely reasonable and appropriate for the trial court in this case to give great weight to expert testimony that considered the level of services provided to Appellant in a controlled prison environment, Appellant's mental health condition, and the prospects for Appellant's successful transition to an unstructured environment outside prison walls. Accordingly, **Gibson** does not support a finding of an abuse of the trial court's discretion under the facts, circumstances, and basis for confinement presented in this case.

cell. *Id.* at 106. However, the Supreme Court concluded that this evidence was insufficient to commit the appellant. Specifically, the Court found,

> if appellant is to be found to be a clear and present danger to himself or others, it is necessary to show an overt act involving attempted suicide or self-mutilation or the infliction or threat of serious bodily harm to others to support the finding. In the absence of such an overt act, actions indicating inability to satisfy his own need for nourishment, personal or medical care, shelter, or self-protection and safety must be shown.
>
> Clearly, the involuntary commitment of appellant was improper. There is no evidence of attempted suicide or self-mutilation. The burning newspaper in appellant's cell cannot be viewed as such an attempt. Appellant was permitted to smoke and other inmates had access to his cell. There is no evidence the newspaper was deliberately set on fire. The testimony reveals only that appellant was extinguishing a folded newspaper that was one-quarter burned when he was confronted by the correction officer.
>
> Similarly, appellant's occasional failure to take medication did not threaten his life or well-being. There is no evidence to show that his behavior changed as a result of missed doses of the drug. Indeed, the only testimony offered indicated that the drug had long-lasting effectiveness and missing an occasional dose would not affect appellant's behavior.
>
> Appellant's possession of the piece of coathanger [*sic*] allegedly fashioned into a weapon was also not a proper basis for commitment. There was no testimony that appellant used or threatened to use the hanger to injure himself or others.

*Id.* at 107 (internal citations omitted). Thus, our Supreme Court considered the evidence presented and concluded that it was insufficient to find that the appellant was a danger to himself or others. In the case before us, the evidence clearly shows that Appellant is a danger to himself as he is unable to satisfy his own need for nourishment, personal or medical care, shelter, self-protection and safety. Unlike the prisoner in *Gibson*, Appellant's behavior

- 8 -

does change as a result of Appellant's failure to take his medication. As Dr. Burke testified, Appellant's failure to take his prescribed medication "is the mainstay at this point in [Appellant's] situation." N.T., 10/10/17, at 11-12. By failing to take his medication, Appellant's schizophrenia is so severe that he is unable to even feed himself and it is Dr. Burke's opinion that Appellant is not able in any way to provide for his own health, safety, welfare and nutrition. *Id.* at 9. This evidence is clearly sufficient to justify the trial court's findings.

Order affirmed. Jurisdiction relinquished.

Judge Kunselman joins the memorandum.

Judge Musmanno notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/18